# THOMAS W. PURCELL

*v.*

# ALFRED PARKS.

1. FEES AND SALARIES—*county clerk not entitled to appropriate fees until compensation is fixed.* Where the county board fails to fix the compensation of the county clerk, elected after the adoption of the constitution of 1870, he is not entitled to appropriate any of the fees of his office to his own use until the amount of his compensation is fixed.

2. Where the county board has not fixed the compensation of the county clerk before his election, the power to do so remains, and they may fix it after his election and it will not be a violation of the constitutional provision prohibiting the increasing or diminishing of his compensation during his term of office, because, until fixed by the board, he has no compensation to be either increased or diminished.

3. Where the board has once acted, and fixed the compensation of the county clerk, that compensation can not be increased or diminished during his term. Any subsequent order of the board, either increasing or diminishing the compensation of a county clerk, can operate only on the compensation of one whose term begins after the making of such order.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Mr. HENRY C. GOODNOW, for the appellant.

Mr. TILMAN RASER, and Mr. THOMAS E. MERRITT, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

By the constitution of this State, adopted in 1870, it is provided that "the fees, salary or compensation of *no municipal officer,* who is elected or appointed for any definite term of office, shall be *increased* or *diminished* during such term." (Sec. 11, Art. 9.)

A county clerk is required to be elected in each county, who shall enter upon his duties on the first Monday of December next after his election, and hold his office "for the term of four years." (Sec. 8, Art. 10.) As to all county officers who should be in office at the meeting of the first General Assembly after

the adoption of the constitution, it was provided by the constitution, that all laws then in force fixing their fees should terminate with the respective terms of such officers, and that the General Assembly should "provide for and regulate the fees of said officers and *their successors,* so as to reduce the same to a reasonable *compensation* for services actually rendered." (Sec. 12, Art. 10.) It is also provided by the constitution, that the county board of each county shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel and other expenses; and, in all cases where fees are provided for, said compensation shall be paid only out of, and shall, in no instance, exceed, the fees actually collected," and that " they shall not allow either of them more per annum than" $2000, in counties containing 20,000, and not exceeding 30,000 inhabitants; "provided, that the compensation of no officer shall be increased or diminished during his term of office." "All fees or allowances by them received, in excess of their said compensation, shall be paid into the county treasury." (Sec. 10, Art. 10.)

In pursuance of the requirements of the constitution, the General Assembly, by an act approved March 29, 1872, did provide for and regulate, among other fees, the fees of county clerks. Rev. Laws 1874, chap. 53, §§ 13 and 18.

In the county of Marion the county board took no action in the matter of fixing the compensation of the county clerk of that county until in March, 1874.

Purcell was elected county clerk of that county at the November election, 1873, for a term of four years from and after the first Monday of December of that year, and, on the latter day, qualified as such and entered upon the duties of his office, and charged and received fees under the act of 1872 providing for and regulating the fees of various officers.

At the March term, 1874, during the term of this officer, the county board of Marion county made and entered on record, against the protestations of this officer, an order, as follows: "Ordered that the *salary* of the county clerk be one thousand dollars per year, to be in force from the first day of December,

1873, as provided by an act of the General Assembly approved · March 29, 1872, and in force July 1, 1872." This action was brought by the treasurer, in behalf of the county, against the county clerk, claiming to recover the excess of the amount of fees actually received by the clerk up to the day of bringing suit, over and above the amount of his salary due at that time, at the rate fixed by this order of March, 1874. The admissions of the parties at the trial show, also. that such excess amounted to the sum of $1060.61, after deducting necessary expenses for clerk hire, stationery, fuel, and other necessary office expenses. The circuit court gave judgment for that sum against Purcell, the clerk. He appeals to this court.

I am instructed by the court to say that, in the opinion of a majority of the judges thereof, the clerk, under the constitution and statute, is not entitled to appropriate to his own use any of the fees of his office, except by virtue of an order of the county board. In the absence of such order, such clerk has no compensation by law whatever. Hence the fixing of such compensation by the county board, in their order of March, 1874, did not, in the sense of the constitution, either increase or diminish the compensation of such officer, for, up to that time, he had, by law, *no compensation* to be increased or diminished. It was the duty of the county board to have fixed the compensation in question before the election. Not having done so, the power remained unexhausted, and the board might have been compelled, either before or after the term began, to exercise the power and fix the same.

We are all of the opinion that when the board has once acted, and fixed the compensation of the county clerk, that compensation can not be changed so as to increase or diminish the compensation to be received by him during his term. A subsequent order of the county board, increasing or diminishing the compensation of the county clerk, can operate only upon the compensation of clerks whose terms begin after the making of such order.

The judgment of the court below is, therefore, affirmed.

*Judgment affirmed.*

The writer of this opinion can not concur in the views of his brethren on this question. His views are as follows:

The several provisions of the constitution must be read together, and so construed as to harmonize in every part thereof and give effect to every clause thereof, if the words used are capable of such construction.

Keeping in mind all these provisions, it seems clear to me that the constitution regarded fees and salaries as compensation, and when it says that it prohibits the increase or diminution (during his term) of " the fees, salary or compensation" of certain municipal officers, it means the same as if the words had been " fees, salary, or any other kind of compensation " Fees, before the adoption of the constitution, had ever been understood as compensation to the officer, and the constitution nowhere professes to change the meaning of the word, or says anything tending to show that the word " fees" is used, in that instrument, in any abnormal sense; but the constitution, as it seems to me, plainly shows that the word "fees" meant compensation, for it requires that the General Assembly should, by a general law, provide for and regulate the fees for the *compensation* of county officers then in office, and of their *successors* to be elected under the new constitution, " so as to reduce the same to a reasonable *compensation* for the services actually rendered." The constitution also required that the amount or portion of these fees so to be provided for as a compensation, which should be appropriated to the personal use of the officer, should be further guarded against growing too large, by other limitations.

In counties, like Marion, having 20,000 inhabitants and not 30,000, this amount should, in no case, exceed $2000; and, in addition to this, it was made the duty of the county board of each county to pass upon the amount of this compensation, and fix the same at what the board might consider adequate, not, in any case, to exceed the amount of fees actually collected, or to exceed the sum of $2000. In other words, the clerk was to receive and appropriate, as compensation, all the fees actually collected under the act of the legislature, until the

amount reached the amount provided, to be fixed by the county board, which might be $2000 or any given sum less than $2000, but could not, lawfully, exceed $2000; and that all fees actually collected, over that amount, should be paid into the county treasury. All these provisions are, nevertheless, subject to the rule, twice laid down in the most positive language, that the compensation of such officer shall, in no case, be increased or diminished during the term of his office. It seems necessarily to follow, that no action of the legislature or of the county board, taken after such officer has entered upon his term, can have any legal effect, in affecting the amount of his compensation for and during that term. Any statute, or order of the county board, to be effective in this regard, must, of necessity, be made and in force before such term begins.

The language of the statute of March, 1872, is in consonance with this view. After dealing with the salaries of certain officers, it says: " the fees and *compensation* of the several officers hereinafter named shall be as follows;" and then follow the provisions as to the fees of the clerks of the circuit court, the recorders, the county clerks, the sheriffs, masters in chancery, county collectors and other local officers. It seems to follow, that Purcell, having entered upon his term as county clerk, with authority to receive and appropriate the fees of that office provided by the General Assembly, restrained by no limitation resulting from the act of the county board in fixing his compensation, had the lawful right to appropriate to himself, as compensation for his services, and for necessary clerk hire, stationery, fuel and other expenses, all the fees arising under the statute, until the limitation of $2000 provided in the constitution was reached, and the excess above that sum he must pay into the county treasury. The order of the county board of March, 1874, had no legal effect upon his compensation, but will, if it remain unchanged, lawfully fix the compensation of the county clerk for the succeeding term. If it be assumed that, in the absence of an order of the county board, the clerk has no compensation, it seems necessarily to follow, that he can have *no compensation* so long as his term lasts.

It seems to me it can not properly be held, that the granting of a compensation to an officer, who, by law, has none, is not, in substance, increasing his compensation. As well might it be said that, to permit a tenant to prove that his landlord had no title, would be no violation of the rule, that "a tenant can not dispute his landlord's title," and this upon the ground that so doing is not disputing his title, but merely showing that "he had no title to dispute." A vicious practice had prevailed in legislatures and county boards, of intermeddling with the compensation of officers after their election, increasing that of friends and reducing that of those not in favor. This was the evil to be cured. To permit a county board to lie by until after the election of a county officer, and afterwards provide a large compensation for the officer, if a friend, and a meagre compensation if otherwise, is, I think, to permit a plain violation of this constitution. If this be not so, the county board may, at any time, by an order made just before an election of a county clerk, rescind all orders theretofore made fixing the compensation of that officer, and then, after the election is over, may fix a large compensation if the successful candidate be in favor, or a small compensation if he be not in favor, and thus the constitution may, in this regard, become a dead letter.