THOMAS DALTON *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF MOLINE *et al.*, Defendants-Appellees.

Third District   No. 76-309

Opinion filed January 28, 1977.

Thomas A. Blade, of Moline, for appellants.

Donald A. Henss, of Moline, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Rock Island County dismissing the complaint filed by plaintiff Thomas Dalton and others. The action was one for declaratory judgment and was brought against the City of Moline, Earl L. Wendt, individually and as mayor of Moline, and Margaret Kaeser, city clerk of Moline, challenging the validity of payment of certain remuneration to defendant Earl L. Wendt, as liquor control commissioner of Moline.

The City of Moline is a home rule unit, as defined in article VII, section 6(a) of the Illinois Constitution of 1970. Section 5—21 of the Code of Ordinances of Moline (Ordinance of 8—18—70) provides that the mayor of Moline shall be the liquor control commissioner for Moline, and section 5—23 of the Code of Ordinances (Ordinance of 8—18—70) authorizes the Moline City Council to fix compensation for the liquor control commissioner.

Defendant Earl L. Wendt began to serve as mayor of Moline on May 1, 1973, at a salary of $12,000 per year. On that date, no separate salary existed for the liquor control commissioner. On December 30, 1974, the Moline city council adopted a resolution establishing a salary of $250 per month for the city liquor control commissioner. Since January 1, 1975, defendant Wendt has been receiving two salaries, one as mayor of Moline and the other as liquor control commissioner of Moline.

On November 26, 1975, plaintiffs filed their complaint in this cause, seeking to stop payment of the liquor control commissioner's salary, on the ground that such payment increased the salary of an elected official during the term for which the officer was elected, in contravention of section 3—13—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 3—13—1) and article VII, section 9(b) of the Illinois Constitution of 1970. Defendants filed a motion to dismiss or strike the complaint on the grounds that (1) the complaint did not state a cause of action, (2) the

salary of the liquor control commissioner had not been fixed prior to December 30, 1974, and only a change in an official's previously fixed salary is prohibited, and (3) the payment of compensation was valid under Moline's powers as a home rule unit. After the court had studied briefs submitted by the parties, the trial court granted defendants' motion to dismiss the complaint.

■■ The sole issue presented on this appeal is the propriety of the order dismissing plaintiffs' complaint. All properly pleaded facts must be accepted as true and we are only concerned with the legal sufficiency of the complaint. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.) We note that, although plaintiffs in the trial court urged both statutory and constitutional grounds in support of their position, plaintiffs' arguments on this appeal appear to be based solely on the Illinois Constitution.

Section 9(b) of article VII of the Illinois Constitution of 1970 provides:
> "An increase or decrease in the salary of an elected officer of any unit of local government shall not take effect during the term for which that officer is elected."

While plaintiffs do not allege that the salary of the mayor of Moline was explicitly increased, and state that since the mayor is by virtue of his office, and the municipal ordinance, also the liquor control commissioner, the midterm salary grant to the liquor control commissioner acted as an indirect and impermissible increase of the salary of the mayor. The Illinois Appellate Court considered a similar issue in *Lee v. City of Venice* (1917), 206 Ill. App. 376, 379. In that case the mayor of Venice was "by virtue of his office, president of the board of local improvements, independent of any ordinance. [Citations.] The duties imposed on * * * [the mayor] as president of such board were simply additional duties given to the mayor to perform and were part of the duties of that office." After citing a clause of the Illinois Constitution of 1870 which was similar to section 9(b) of article VII of the Constitution of 1970, the appellate court in the *Lee* case held (at 206 Ill. App. 376, 379-80):
> "An ordinance increasing the salary of a mayor during his term of office was held invalid in *Stadler v. Fahey*, 87 Ill. App. 411. The salary of a city officer cannot be changed during his term of office even though the compensation provided may as a matter of fact be inadequate. *Gathemann v. City of Chicago*, 263 Ill. 293; *City of Chicago v. Wolf*, 221 Ill. 131. Neither does the imposition of additional duties upon an officer authorize an increase in his compensation during the term for which he is elected. *Fergus v. Russel*, 270 Ill. 626, and authorities there cited."

In the instant case, the city ordinance of August 18, 1970, imposed the duties of liquor control commissioner upon the mayor of Moline and

those duties thereby became part of the office of the mayor of Moline. Thus, the Illinois Constitution, and the precedents as outlined in the *Lee* case, prohibit the salary grant, of which the plaintiffs complain, for the period of the term to which the mayor was elected.

In attempting to avoid this result, defendants cite *Purcell v. Parks* (1876), 82 Ill. 346. In the *Purcell* case, an official was elected at a time when no salary had been set for the position. When a salary was later set, during the official's term, the payment of the salary was challenged. The *Purcell* court held that the fixing of such compensation by the county board subsequent to the official's election did not, in the sense of the constitution, either increase or diminish the compensation of such officer for, up to that time, he had by law *no compensation* to be increased or diminished.

Defendants argue that since a salary for the liquor control commissioner had been authorized but not set prior to the mayor's election, the salary grant of December 30, 1974, was not an increase in the mayor's salary within the meaning of the constitutional prohibition.

*Purcell*, however, was distinguished in *Baumrucker v. Brink* (1940), 373 Ill. 82, 25 N.E.2d 51. In *Baumrucker*, a village official was elected at a time when an ordinance provided that his position should receive no salary. When a salary was later fixed during the official's term, the Illinois Supreme Court held (at 373 Ill. 82, 85-86):

> "It seems clear to us that the prohibition of the constitution is directed against the changing of financial emoluments, if any, during the officer's term and was not intended to be a mere play on words under the guise of which an officer receiving nothing in the form of money, could have his compensation increased, and, on the other hand, an officer receiving pay, however small or large, might not have it changed in the slightest degree. The object sought to be accomplished by the section of the constitution is to take it out of the power of municipal officers of the class designated, elected upon an implied agreement to accept the burdens of office as they exist, to increase the emoluments of the officer after the election."

The *Baumrucker* court proceeded to distinguish *Purcell* as a limitation solely on county governments.

■■ We conclude that *Purcell* would not be controlling in this case. Under the constitutional provision and with the precedent in the *Lee* case, the nominally two separate positions of mayor and liquor control commissioner must be considered as one. Since the salary for the mayor was fixed prior to the mayor's election, the salary for the one, constitutionally seen, position was also fixed, and the case is clearly distinguishable from the *Purcell* situation. Here the salary falls within the

objects of the constitutional prohibition described in the *Baumrucker* case.

Defendants also argue that Moline's home rule unit powers validate the salary grant to the liquor commissioner and evade the application of the *Lee* and *Baumrucker* precedents and, also, the application of the constitutional prohibition against midterm salary changes. Section 6(a) of article VII of the Illinois Constitution of 1970 provides in part:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

In *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 338 N.E.2d 15, the Illinois Supreme Court held that a home rule unit could not increase the filing fee in civil cases, in order to provide more support for a county law library, on the ground that the administration of justice is a State concern and does not pertain to local governments and affairs. Subsequently, in *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, 347 N.E.2d 716, the court noted (at 63 Ill. 2d 256, 259):

"In *Ampersand* * * *, this court examined in some detail the history ' and effect of * * * [the article VII, section 6(a)] constitutional limitation. The opinion noted that the home rule grant was purposely left broad and imprecise, and that the ultimate construction of the qualifying phrase 'pertaining to its government and affairs' was a matter for the courts. In the words of the late Professor David C. Baum, counsel to the constitutional convention's Local Government Committee, 'the question is not whether the "pertaining to . . ." language should limit the home rule grant, but rather how extensive the limitation should be.' (Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations*. 1972 U. Ill. L.F. 137, 153."

We, therefore, conclude that the objects of section 9, article VII of the Illinois Constitution are indeed matters of State concern, and that the application of that section to this case cannot be avoided by use of home rule powers.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

STENGEL, P. J., and BARRY, J., concur.