## ALONZO W. JOHNSON *v.* THE SCHENLEY DISTILLERS CORPORATION

[No. 7, October Term, 1942.]

*Decided October 28, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Israel S. Gomborov*, with whom were *A. David Gomborov* and *Harry Silbert* on the brief, for the appellant.

*Raphael Walter*, with whom were *David S. Sykes* and *Nyburg, Goldman & Walter* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

This appeal presents to this court for review the correctness of the action of the court below in sustaining a demurrer to and the dismissal of the Second Amended Bill of Complaint filed by appellant against the appellee. Alonzo W. Johnson was employed on March 1, 1940, by the Schenley Distillers Corporation, a body corporate. This employment was effected by a letter of that date written to Johnson by S. S. Becker, the treasurer of the corporation, in which the terms and conditions of the employment were stated, which Johnson accepted. This letter and acceptance is filed with the Second Amended Bill as an exhibit. Under this agreement of employment Johnson agreed to perform such duties as appellee shall direct from time to time, devoting his entire time and attention to the interest of the corporation and/or any of its subsidiaries or affiliates; and each party thereto reserved the right of terminating the agreement of employment on the 15th or final day of any calendar month. The stipulated compensation was to be "in full for all services performed." It further provided: "It is expressly understood and agreed that in the event any plan is adopted for the payment of any bonus or extra compensation to you in addition to the compensation above provided that the terms and conditions under which such bonus or extra compensation shall be paid to you shall be set forth in a written agreement signed by an executive officer of this Company, and you acknowledge notice that no other person has authority, implied or otherwise, to make any arrangements for the payment of such bonus or extra compensation. The execution in the future of an agreement providing for a bonus or extra compensation shall not affect our respective rights

to terminate this agreement on the 15th or final day of any calendar month."

On May 25, 1940, Lewis S. Rosenstiel, Chairman of the Board of Directors of the appellee, wrote a letter addressed to "Each Participant" enclosing a Sales Bonus Plan. Copies of this letter and plan were sent to Johnson and are exhibited with the Second Amended Bill. The letter, among other things, contains the following: "We feel that your honest, able efforts will mean substantial additional compensation to you at the year's end. Furthermore, as I am sure you will appreciate upon reading the Plan, these same efforts are needed to make it successful for your fellow-workers as well as yourself. We know that you will remain conscious of this added obligation."

The bonus plan was to be "effective for the period beginning May 1, 1940, and ending December 31, 1940." It provided :

"If an employee is discharged, or voluntarily terminates his employment with our company then his rights under the plan are automatically and completely forfeited. In a case of death of an employee during the bonus period if the district in which that employee was employed earns the bonus at the end of the bonus period the company will pay the bonus to the employee's estate based on the employee's salary up to the date of his death."

"If the participant's employment is terminated for any other reason during the quota period it shall be discretionary with the company whether he is to receive any portion of the bonus."

The final clause of the bonus plan reads as follows: "Please note specifically that participation in this plan in no way implies or constitutes a contract of employment for the period through December 31, 1940."

On August 6, 1940, and on August 15, 1940, Johnson received written communication from the appellee changing the "point value" of some of the brands and these are exhibited with the Second Amended Bill.

After stating the facts as set out above, the Second Amended Bill contained the following paragraphs and prayers:

"8. Complainant has faithfully performed all on his part to be performed at his regular employment and under the said circular letter and 'Sales Bonus Plan' and has done nothing to bar him from participating in and being entitled to the extra compensation as in said circular letter and 'Sales Bonus Plan' provided, but that the said defendant body corporate, Schenley Distillers Corporation, of its own volition, without giving this complainant any information as to the cause thereof, arbitrarily discontinued the said plan and closed the entire division in which this complainant was employed, thus depriving this complainant, without any fault of his own, to further continue to proceed under the aforesaid 'Sales Bonus Plan'."

"9. That your complainant is not able to calculate the amount of bonus due and payable to him because the records are under the supervision and control of the defendant body corporate and that your complainant is without means of obtaining the necessary information in order to arrive at the amount due him."

"10. That your complainant has made demand upon the said Schenley Distillers Corporation for a discovery and an accounting of the amount of bonus due him, but the said body corporate has refused and still refuses to do so."

"11. And that your complainant does not have an adequate remedy at law."

"To the end wherefore, your complainant prays this court:

"A. To pass an order directing Schenley Distillers Corporation, a body corporate, to answer this Bill of Complaint under oath accounting to your complainant Alonzo W. Johnson the amount of cases of the various types of whiskey sold in the territory of Delaware, Maryland and District of Columbia from the period starting May 1, 1940, and ending December 31, 1940.

"B.   That the said defendant body corporate account to your complainant for any and all sums of money due him by virtue of the said bonus agreement mentioned in this Bill of Complaint.

"C.   That your complainant may have such other and further relief as his cause may require."

And prayed for process.

The question on this record is like the question involved in the case of *Vincent v. Palmer,* 179 Md. 365, 369, 19 A. 2d 183, 187, "whether the profit-sharing agreement is a mere gratuity or a contract with a valuable consideration."

The "Sales Bonus Plan" does not provide for extra work.   The kind and character of work it involves is identical with the work that Johnson was employed to do under the original contract of employment.

It is true a bonus was promised if certain sales were made between May 1 and December 31, 1940.   Its effect was to stimulate the employees to do that which they were required to do under their original contract of employment.   The appellee seems to have been putting on a sales campaign.   But there was no obligation on its part to continue the campaign.   There was no consideration moving from Johnson to the appellee that required a continuation of the campaign.   And if it failed in the results anticipated, it could be abandoned by the appellee.   The contract of employment provided: "Either of us, however, shall have the privilege of terminating this agreement on the 15th or final day of any calendar month."   The bonus plan did not suspend or affect this provision.   On the contrary it in terms provides: "If any employee is discharged" "his rights under the plan are automatically and completely forfeited."   And the plan stated plainly: "Please note specifically that participation in this plan in no way implies or constitutes a contract of employment for the period through December 31, 1940."

So what we have is a bonus plan which does not provide for any work to be done by Johnson in addition to

the work he was required to do under his original contract of employment. It does provide that Johnson could be discharged during the time the plan was in effect, and it specifically states that the plan is not a contract. If the bonus plan was not based on a valuable consideration and was not a contract, then the bonus was and could only be regarded as a gratuity, which we find it to be, and this being so it cannot be enforced by Johnson against the appellee. *Vincent v. Palmer, supra; Scott v. Duthie & Co.,* 125 Wash. 470, 216 P. 853, 28 *A. L. R.* 328; *Muir v. Leonard Refrigerator Co.,* 269 Mich. 406, 257 N. W. 723, 724; *Fontius Shoe Co. v. Lamberton,* 78 Colo. 250, 241 P. 542, 543.

In the case of *Fontius Shoe Co. v. Lamberton, supra,* the court said: "The trial court found that defendant company discharged plaintiff and his assignors 'arbitrarily and capriciously and without any reason or justifiable cause.' The correctness of this finding is challenged, upon the ground that no evidence was taken upon that point. But assuming that the finding is correct, we are still unable to hold that plaintiff is entitled to recover. The defendant company seems to have incorporated into the contract language which permits such conduct on its part, and also to deprive an employee of his bonus in the event of such a discharge. It is true that a bonus is generally held to be a part of the agreed compensation, but in the instant case the defendant expressly states and provides that any bonus it gives shall be given 'only as a gratuity'."

The only difference in that case and the case at bar is, the bonus agreement is specifically declared to be a gratuity and in this case we construe the bonus agreement to be a gratuity.

"It is difficult for plaintiff to extricate himself from the conditions of employment which he has voluntarily assumed, for, even though the forfeiture provisions seem harsh, we can only interpret the contract which the parties have made." *Muir v. Leonard Refrigerator Co., supra* (269 Mich. 406, 257 N. W. 724).

The Sales Bonus Plan states: "We feel that your honest, able efforts will mean substantial additional compensation to you at the year's end. Furthermore, as I am sure you will appreciate upon reading the Plan, these same efforts are needed to make it successful for your fellow-workers as well as yourself. We know that you will remain conscious of this added obligation."

We do not think this statement, when considered with all the other facts stated in Second Amended Bill of Complain and exhibits, can be taken as constituting a valuable consideration.

In the eighth paragraph of the bill it is alleged that the appellee "of its own volition, without giving this complainant any information as to cause thereof, arbitrarily discontinued the said plan and closed the entire division in which this complainant was employed, thus depriving this complainant, without any fault of his own, to further continue to proceed under the Sales Bonus Plan."

*Miller's Equity Procedure,* at pages 116 and 117, stated: "All material facts upon which reliance is placed for relief in equity must be set forth: every fact essential to the plaintiff's title to obtain relief must be stated."

The allegations in this paragraph are indefinite. It is not stated when the division in which he was employed was closed. And as far as this court knows, from the allegations of the Bill, he may have been transferred to other work in the organization of the appellee. We do not decide that these omissions would necessarily render the bill bad, but we do say that all material facts should be fully stated. It is not necessary to refer to the other averments of this paragraph as they have been disposed of heretofore in this opinion.

We, therefore, think that the court below was right in sustaining the demurrer to the appellant's Second Amended Bill of Complaint and dismissing the same, and its decree should be affirmed.

*Decree affirmed, with costs.*