(No. 69821.—

PHILIP J. ROCK, Indiv. and as President, Illinois State Senate, *et al.*, Petitioners, v. ROLAND W. BURRIS, Comptroller for the State of Illinois, *et al.*, Respondents.

*Opinion filed November 30, 1990.*

Darrell Widen, of Chicago, and Craig S. Burkhardt, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., James Morphew and Philip W. Weber, all of Springfield, for petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Michael J. Hayes, Deputy Attorney General, Shawn W. Denney, First Assistant Attorney General, Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, who are several members of the Eighty-sixth General Assembly, seek a writ of *mandamus* ordering defendants to issue warrants for and dispense funds pursuant to their recent pay raise legislation and ask that this court declare that this legislation is constitutional. (Pub. Act 86—27, eff. July 7, 1989; Pub. Act 86—

956, eff. Dec. 5, 1989 (amending Ill. Rev. Stat. 1989, ch. 108½, pars. 2—108, 9—121.1, 14—105.1).) Because we hold here that payment of the additional money provided for in this legislation is impermissible insofar as it would increase the legislators' salaries during the term for which they were elected, in violation of article IV, section 11, of the Illinois Constitution of 1970, we deny plaintiffs' request.

Plaintiffs in this case are Philip J. Rock, President of the Illinois Senate, James "Pate" Philip, Minority Leader of the Illinois Senate, Michael J. Madigan, Speaker of the Illinois House of Representatives, and Lee A. Daniels, Minority Leader of the House of Representatives. Defendants are Roland W. Burris and Jerry Cosentino, Comptroller and Treasurer of the State of Illinois, respectively.

Public Act 86—27, which was signed into law on July 7, 1989, raises the amounts that are paid annually for various leadership positions in the General Assembly, and creates additional leadership positions. The pay raise provisions of this legislation were to be effective retroactively to January 11, 1989. Public Act 86—956 appropriated the money for the compensation provided in Public Act 86—27, and was signed by the Governor on December 5, 1989.

On December 6, 1989, the Attorney General issued an opinion in which he concluded that the pay raise provisions of this legislation represented an unconstitutional salary increase. (1989 Ill. Att'y Gen. Op. ___, No. 89—002.) In reliance upon the Attorney General's opinion, defendants have refused to pay the additional amounts provided by the legislation.

On February 6, 1990, plaintiffs filed an action with this court asking that it grant plaintiffs permission to file their cause as an original action with this court. We granted plaintiffs' request. The sole issue now before

this court is whether payment of the additional amounts that this legislation would provide to the various legislators violates section 11 of article IV of the Illinois Constitution of 1970. We conclude that it would.

The pertinent portion of the legislative article of the Illinois Constitution provides as follows:

> "A member shall receive a salary and allowances as provided by law, but changes in the salary of a member shall not take effect during the term for which he has been elected." (Ill. Const. 1970, art. IV, §11.)

The legislation in question here provides, among other things, for annual lump sum additional amounts of money to various legislators in leadership positions, and creates additional leadership positions, thereby increasing the annual lump sum payments to the members chosen to fill these positions. Additionally, this legislation was to become effective immediately upon passage, and was to be applied retroactively, thereby increasing the amounts payable to these legislators during the terms of office for which they were elected and in which the legislation was passed. This, we find, violates the provision in article IV, section 11, which prohibits a change in a legislator's salary "during the term for which he has been elected."

Plaintiffs, nevertheless, contend that the "additional amounts" paid to institutional officers of the General Assembly are not salary, and thus can be increased without constitutional limitation. (Ill. Rev. Stat. 1987, ch. 63, par. 14.) As this court stated recently in *Harlan v. Sweet* (1990), 139 Ill. 2d 390, 395, however, the word " 'salary' *** encompasses all forms of compensation paid to the public official for performing the duties of office." The fact that institutional officers in the General Assembly are paid "an additional amount" above the base amount paid to all other legislators makes it no less a salary. It is merely a larger salary.

Plaintiffs also contend that they are entitled to a greater compensation because of the additional duties that come with holding these positions. While it might be true that these additional duties warrant additional compensation, this does not excuse the violation of the constitutional prohibition against a legislator's increasing his or her own salary during the present term in which he or she is in office. (Ill. Const. 1970, art. IV, §11. See also G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 476-77 (1969).) In support of the argument that these additional duties can justify an in-term pay raise, plaintiffs cite *Lemaster v. City of Green Rock* (1983), 114 Ill. App. 3d 163. For the same reasons that were discussed in *Harlan*, however, *Lemaster* is distinguishable and provides little support for plaintiffs' argument. While, as with the county treasurers in *Harlan*, the legislators in this case may increase their salaries to take effect in a later term, they cannot alter their own salary structure and have it take effect for the same term in which the alterations are made. (*Dumke v. Anderson* (1976), 44 Ill. App. 3d 626, 633 (salary of local official cannot be diminished during his term).) Furthermore, neither *Niebling v. Town of Moline* (1956), 8 Ill. 2d 11, 14, nor *People ex rel. Reusch v. Hire* (1950), 406 Ill. 341, upon which plaintiffs also rely, provides meaningful support for plaintiffs' argument. Neither case actually addressed the question presented here of whether an in-term pay raise is constitutionally permissible.

Plaintiffs similarly contend that their duties as institutional officers are distinct from their duties as legislators and, therefore, the constitutional proscription against an in-term pay raise does not apply. We note first that, if plaintiffs' premise were true, and their duties as institutional officers were distinct from their duties as legislators, thereby justifying "increased

amounts" for their institutional offices that are separate from their legislative positions, the validity of these "additional amounts" would be suspect in light of article IV, section 2(e), the second paragraph of which provides as follows:

"No member of the General Assembly during the term for which he was elected or appointed shall be appointed to a public office which shall have been created or the compensation for which shall have been increased by the General Assembly during that term." Ill. Const. 1970, art. IV, §2(e).

We are not persuaded that these institutional positions are distinct from normal legislative functions. In fact, the drafters of our constitution anticipated that the legislative branch would function using committees. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 1376-77.) Furthermore, given the fact that this legislation will result in approximately 120 legislators' holding leadership positions, leaving only approximately 51 "rank and file" members, plaintiffs' contention that these leadership duties are separate from their constitutional duties as legislators is unpersuasive. As such, we conclude that the pay increase provided by this legislation represents additional remuneration for the additional duties assigned to legislators and is, therefore, subject to the restrictions contained in article IV, section 11.

Plaintiffs also argue that if the court strikes down the present pay raise, it will leave the legislature powerless to discipline its own members. For instance, plaintiffs argue, if a committee leader refused to hold hearings, the appropriate branch of the General Assembly could not remove that member from that leadership position because such an act would lower that member's salary during the present term. What the constitution requires, both within the legislative article and elsewhere, is that

the salary for the various constitutional offices within State and local government be carved in stone when the public officials take office and that the salary structure so set not be changed to take effect during that term. It is perfectly permissible for the salary of legislators in leadership positions to be higher than that of other legislators. It is also permissible for the legislature to choose at its own will who will fill these various positions and whom it might wish to remove at any time, just as it is permissible to impeach the Governor and shift the salary to the next person in charge. It is not permissible, however, as in the present case, for the legislature to alter the pay structure to become effective immediately. See *Brissenden v. Howlett* (1964), 30 Ill. 2d 247.

Finally, plaintiffs contend that the additional compensation provided by this legislation is meant to be an allowance rather than salary, and that the constitution contains no proscription against in-term increases in allowances. Plaintiffs contend that this must be so since the salary increase does not apply to all legislators, but merely those in leadership positions who, in the exercise of their leadership positions, necessarily incur greater expenses than do other legislators.

While it might be true that members of the General Assembly who are in leadership positions incur greater expenses than those who are not similarly situated, and that their additional expenses can be paid without this constitutional restriction, the legislation in question makes no attempt to justify these expenses. The "additional amounts" are merely a lump sum amount that would go into the pockets of the individual legislators regardless of how it would be used. It is not designed to be vouchered or itemized, as required by section 9 of the State Comptroller Act (Ill. Rev. Stat. 1987, ch. 15, par. 209(b)). There is no attempt, moreover, to justify these "additional amounts" as being designed to cover addi-

tional expenses, nor is there a sincere attempt to attest to the genuineness of these added expenses. The Act clearly provides that the additional amounts are "for their services as such officers." (Ill. Rev. Stat. 1989, ch. 63, par. 14.) We are not persuaded, therefore, that these "additional amounts" represent anything more than an impermissible in-term legislative pay raise. See *Fergus v. Russel* (1915), 270 Ill. 626.

For the foregoing reasons, we deny plaintiffs' petition for a writ of *mandamus* and dismiss this action.

*Writ denied.*